## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INELL FOYE,                              :
            Plaintiff                :        CIVIL ACTION NO. 3:14-CV-2478
                   :        (Judge Nealon)
     v.                             :
                   :
WEXFORD HEALTH SOURCES,                  :
INC., ET AL.,                            :
            Defendants               :

### MEMORANDUM

On December 30, 2014, Plaintiff, Inell Foye, an inmate currently confined at

the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal

Township"), filed the above captioned  pro se civil rights action pursuant to 42

U.S.C. § 1983.  (Doc. 1).  He names the following as Defendants: Wexford Health

Sources, Inc. ("Wexford Health"); Mark Hale; Patrick Cummiskey; Pennsylvania

Department of Corrections; SCI-Coal Township; Vincent Mooney; Jodie Martino;

Chris T. Yackiel; Brian Davis; and Dorina Varner.  See (Id.).

Plaintiff alleges that Defendants have failed to provide him with "medical

care/treatment on the specific days [his] shoulder injuries and dislocations

occurred, or anytime thereafter on multiple occasions."  (Id. at p. 4).  In particular,

Plaintiff alleges that he was "denied the right to a MRI or an" orthopedic

consultation, "which is with the proper procedures and guidelines of adequate

medical treatment/care."  (Id. at p. 6).  Plaintiff alleges that during the time

relevant to his complaint he submitted a number of inmate request slips and "exhausted administrative remedies through grievance." (Doc. 1, pp. 3-9). Attached to the complaint, inter alia, are copies of the inmate request slips and filings associated with his grievance. (Id. at pp. 9-29). He advances claims of deliberate indifference, negligence, cruel and unusual punishment, and pendent state claims of medical negligence and medical malpractice. (Id. at p. 5). For relief, Plaintiff requests that Defendants be held liable for the following damages: one million dollars ($1,000,000.00) for damages against each Defendant; two and a half million dollars ($2,500,000.00) for compensatory damages against each Defendant; two and a half million dollars ($2,500,000.00) in punitive damages against each Defendant; costs; and interest. (Id.). He also requests injunctive relief in the form of an order directing Defendants to provide Plaintiff with an MRI exam, an orthopedic consultation, and surgery, if necessary, for his right shoulder. (Id.). Plaintiff also seeks a transfer to SCI-Chester, SCI-Graterford, or SCI-Mahanoy, "due to possible" retaliation. (Id.).

Presently before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Mooney, Martino, Yackiel, and Varner (collectively "Corrections Defendants"), (Doc. 27), and a motion to dismiss or in the alternative a motion for summary judgment filed by Defendants

2

Davis, Hale and Wexford Health, (Doc. 30). These motions have been briefed and are ripe for disposition. For the reasons that follow, Corrections Defendants' motion to dismiss and Defendants Davis, Hale, and Wexford Health's motion for summary judgement will be granted as to Plaintiff's claims of deliberate indifference. Additionally, Defendants Cumminsky, SCI-Coal Township, and the Pennsylvania Department of Corrections will be dismissed pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's remaining pendent state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

## I.    STANDARDS OF REVIEW

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, given that he was granted in forma pauperis status to pursue this

4

suit, the screening provisions of 28 U.S.C. § 1915(e) apply. The court's obligation to dismiss a complaint under the Prisoner Litigation Reform Act's ("PLRA") screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Id.; Dare v. U.S., 2007 U.S. Dist. LEXIS 45040 (W.D. Pa. 2007), aff'd, 264 F. App'x. 183 (3d Cir. 2008).

### B.     Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. FED. R. CIV. P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more

6

than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties

must produce evidence to show the existence of every element essential to its case

that they bear the burden of proving at trial, for "a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp.,

967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an

assertion of fact may result in the fact being considered undisputed for the purpose

of the motion, although a court may also give parties an opportunity to properly

provide support or opposition. FED. R. CIV. P. 56(e).

## II.  STATEMENT OF FACTS

On February 12, 2013, Plaintiff was evaluated by Chad Yordy, a registered

nurse. (Doc. 31-1, p. 73). Nurse Yordy noted that Plaintiff did not have an "acute

medical condition." (Id.).

On July 9, 2013, Plaintiff was evaluated by Nicholle Boguslaw, PA-C. (Id.

at p. 68). PA Boguslaw noted that Plaintiff was seeking "lower bunk status."

(Id.). Plaintiff stated to PA Boguslaw that he was placed on bottom bunk status

for "1 year in 2011 and it was never renewed." (Id.). Plaintiff reportedly

presented PA Boguslaw with a grievance that indicated that Plaintiff's bottom

bunk status was for a "2008 skull" fracture. (Doc. 31-1, p. 68). Plaintiff denied a history of "seizures or deficit due to" that fracture. (Id.). Plaintiff also admitted to having a plate in his head. (Id.). As a result of her examination, PA Boguslaw determined that there was "no medical indication for lower bunk." (Id.).

From July 9, 2013, to December 10, 2013, Plaintiff's medical records establish that he had numerous appointments with medical personnel for reasons unrelated to his alleged shoulder issue. (Id. at pp. 60-67).

On December 11, 2013, Plaintiff submitted an inmate request to staff member seeking an MRI or X-ray of his right shoulder because he "had a problem with [his] shoulder for years," and that, earlier that day, he injured his shoulder. (Doc. 1, p. 10). According to Plaintiff, he injured his shoulder while he "was supporting [his] body weight leaning on the sink with [his] right arm and [his] shoulder came out of [the] socket." (Id.). Plaintiff stated that he "had to grab the bed bars and wiggle and pull to get it back in place." (Id.). Plaintiff was seeking to "have [his] shoulder looked at and also discuss possible surgery." (Id.).

On December 12, 2013, Dr. Lewis, the Prison Medical Director, responded to Plaintiff's December 11, 2013 request. (Id.). Dr. Lewis instructed Plaintiff to make a formal sick call "if shoulder dislocation occurs." (Id.). Dr. Lewis also informed Plaintiff that his "shoulder issue will be further evaluated with future

doctor line." (Doc. 1, p. 10).  Additionally, Dr. Lewis informed Plaintiff that "it is very unusual that any surgery or intervention will occur for isolated shoulder dislocations." (Id.).

On that same date, Plaintiff was examined by Dr. Lewis for "Md line refer." (Doc. 31-1, p. 60).  The examination was in regards to Plaintiff's attempt to obtain bottom bunk status.  (Id.).  Dr. Lewis approved Plaintiff for temporary bottom bunk status.  (Id. at p. 33).

On January 2, 2014, an X-ray of Plaintiff's right shoulder was ordered.  (Id. at p. 30).  On January 9, 2014, Plaintiff underwent an X-ray on his right shoulder.  (Id. at pp. 19, 60).  The radiology report indicates that "[m]ultiple views of the right shoulder demonstrate no acute fracture or dislocation." (Id. at p. 19).  Further, the report also found that "[n]o significant degenerative changes [were] noted." (Id.).  The impression of these results was "[n]o acute osseous abnormality identified." (Id.).

On January 16, 2014, Plaintiff submitted an inmate request to staff member seeking the results of his X-ray. (Doc. 1, p. 11).  On January 21, 2014, Dr. Lewis responded to Plaintiff's request. (Id.).  Dr. Lewis informed Plaintiff that his "shoulder X-ray is negative." (Id.).

On January 22, 2014, PA Boguslaw noted that she reviewed Plaintiff's

9

shoulder X-ray, which was negative "for abnormality" and the "objective findings did not match subjective complaints." (Doc. 31-1, p. 58). As a result, PA Boguslaw found that Plaintiff's bottom bunk status was "not medically necessary at this time," and Plaintiff's bottom bunk status was discontinued. (Id.).

On January 25, 2014, Plaintiff submitted an inmate request to staff member in response to the January 21, 2014 response from Dr. Lewis. (Doc. 1, p. 12). Plaintiff stated he did "not believe that a X-ray will reveal damage to my ligaments, tendons, or rotary cuff." (Id.). As a result, Plaintiff sought to be scheduled "for a MRI to determine exactly what the problem is and why my shoulder is coming out of socket." (Id.).

Dr. Lewis responded to Plaintiff's request and stated that "[t]he problem is your shoulder dislocates. This is nothing SCI-Coal has to do anything about." (Id.). Dr. Lewis continued by instructing Plaintiff to "make a sick call for your feet (+arm)." (Id.). Dr. Lewis also informed Plaintiff that he would be "placed in infirmary if [his] shoulder dislocates and cannot be reduced." (Id.). Additionally, Dr. Lewis advised Plaintiff that he would "be offered shoulder sling for the remainder of [his] incarceration." (Id.).

From January 25, 2014, to April 21, 2014, Plaintiff's medical records establish that he had numerous appointments with medical personnel for reasons

unrelated to his alleged shoulder issue.  (Doc. 31-1, pp. 52-58).

On April 22, 2014, Plaintiff sent an inmate request to "Correctional Health Care Admin."  (Doc. 1, p. 13).  In his request, Plaintiff stated that his "discrepancy with [his] BOTTOM-BUNK status was just resolved and reinstated after exhausting [his] administrative remedies through the grievance procedure."  (Id.) (emphasis in original).  According to Plaintiff, subsequent to "a review of [his] record and the grievance being reviewed by Central Office [and] being evaluated by M.D. Lewis prior to his departure," his "bottom-bunk status was reinstated for another year."  (Id.).  Plaintiff also indicated an "assessment and sit down with M.D. Lewis and a high ranking individual . . . from Central Office, confirmed the fact that [Plaintiff] has a depressed skull fracture and a part of [his] skull is still missing but is covered with titanium mesh, and [his] shoulder also dislocates at times."  (Id.).  Plaintiff's request asserted that his bottom bunk status was reinstated approximately in "Nov./Dec. 2013 and was supposed to last for" one (1) year, but that he "was informed by the unit C.O. and Ms. Foulds that his [bottom bunk] status ended on" January 25, 2014.  (Id.).  Plaintiff requested to be "seen by yourself, the Corr. Health Care Admin., M.D. and D. Dressler to address this issue if [his] bottom bunk status is not reinstated."  (Id.).

On that same day, Defendant Martino responded to Plaintiff's request.  (Id.).

11

Defendant Martino informed Plaintiff that she "reviewed [his] medical record and spoke with our medical providers" and concluded that "[b]ottom bunk status is not clinically/ medically indicated." (Doc. 1, p. 13).

On April 30, 2014, Plaintiff filed a request to Defendant "Ms. Jodie Martino-CHCA" which claimed that she "failed to acknowledge the fact that [he] was on bottom-bunk status for [his] skull fracture and a part of [his] skull is still missing, as the copy of the grievance [he] attached (#470371) to the request sent to you dated" April 25, 2014. (Id. at p. 14). Plaintiff also noted that while his "x-ray didnt confirm the allegations of [his] shoulder dislocating, the X-ray results were NEGATIVE," he also asserted that an X-ray "will not show ligament and tendon damage" and he has "rotary cuff damage." (Id.) (emphasis in original). Plaintiff also informed Defendant Martino that he "was supposed to have a MRI done of [his] right shoulder prior to the departure of M.D. Lewis, [they] had discussed this in one of [his] follow up's." (Id.). In regards to his shoulder, he continued by requesting an MRI "DUE TO RECORDED PAST AND RECENT DISLOCATIONS." (Id.) (emphasis in original). On May 5, 2014, Defendant Martino responded to Plaintiff's request and indicated that Plaintiff's "bottom bunk status is not clinically indicated per medical record review and medical providers." (Id.). Second, Defendant Martino also informed Plaintiff that she

12

does not schedule "or prescribe as [she is] not a medical provider." (Doc. 1, p. 14). Lastly, Defendant Martino instructed Plaintiff to "sign up for sick call" if he is "still having medical concerns." (Id.).

On May 7, 2014, Plaintiff filed an inmate request with "Medical-Doctor or P.A." (Id. at p. 15). In the request, Plaintiff stated that he has "been seen in the past recently regarding [his] right shoulder" and that it "dislocates from time to time." (Id.). Plaintiff continued by asserting that his shoulder "dislocated again a few days ago when [he] turned over while sleeping, supporting his body trying to re-adjust." (Id.). Plaintiff also indicated that he had an X-ray done in January and "was supposed to have a MRI done as a follow-up due to the fact that a X-ray will not reveal ligament and rotary cuff damage." (Id.). Plaintiff also asserted in his request that he has "a recorded history of a shoulder problem." (Id.). Plaintiff requested the staff to "schedule [him] for the follow-up MRI a.s.a.p." (Id.). Plaintiff also asserted that he "had bottom-bunk status due to a skull fracture and a piece of [his] skull still presently missing and [he does not] believe it's appropriate to have [him] at risk with a dislocating shoulder with these documented problems." (Id.).[1]

On May 8, 2014, Plaintiff filed an official inmate grievance ("grievance

_____

[1] No response is indicated on the inmate request form. See (Doc. 1, p. 15).

#509307") which alleged that the "medical staff, SCI-Coal Township are being deliberately indifferent and medically negligent." (Doc. 1, pp. 16-17). According to Plaintiff, he submitted his May 7, 2014 request, which was treated as a "sick call." (Id. at p. 16).

On that same date, Plaintiff presented to the medical department and was seen by Defendant Brian Davis, PA-C. (Doc. 31-1, p. 52). Plaintiff, again, sought bottom bunk status. (Id.). During the examination, Defendant Davis quoted Plaintiff as saying his "shoulder comes out of place." (Id.). Defendant Davis also noted Plaintiff's history of shoulder dislocations, but did not find "objective findings of such." (Id.). Defendant Davis noted that Plaintiff's January 2014 X-ray was determined to be normal. (Id.). Defendant Davis also found Plaintiff to be neurologically intact and able to move all extremities. (Id.). As a result of his examination, Defendant Davis concluded that Plaintiff did not qualify for bottom bunk status. (Id.). Defendant Davis also informed Plaintiff to present to medical "if shoulder dislocation as it can be documented." (Id.).

On May 22, 2014, Defendant Chris T. Yackiel, RN Supervisor, submitted his initial review response of grievance #509307. (Doc. 1, p. 18). According to Defendant Yackiel, he reviewed Plaintiff's record and found that his "current medical restriction form is signed by Dr. Lewis and does not indicate any

14

restrictions." (Doc. 1, p. 18).  Yackiel also noted that "Dr. Lewis only ordered an

xray which was taken in January 2014.  The results were negative." (Id.).

Defendant Yackiel stated that Plaintiff was "seen and assessed May 8, 2014 and

no objective findings were discovered which indicate a need for further testing or

medical restrictions." (Id.).  As a result, Defendant Yackiel denied grievance

#509307. (Id.).

On May 26, 2014, Plaintiff appealed the denial of grievance #509307 to the

facility manager. (Id. at p. 19).  Plaintiff disagreed "with the findings and review

response to deny [his] grievance in regards to the need of a MRI and re-

instatement of [his] bottom bunk status." (Id.).  Plaintiff argued that the

"[r]eoccurrences of [his] right shoulder dislocating warrants a follow-up MRI."

(Id. at p. 18).

On June 12, 2014, the facility manager, Defendant V. Mooney, submitted a

facility manager's appeal response regarding Plaintiff's grievance appeal. (Id. at

p. 21).  Defendant Mooney noted that "Dr. Lewis ordered an x-ray only in January

2014," the results of which were negative. (Id.).  Defendant Mooney also

indicated that Plaintiff's "current restrictions, of which there are none, was signed

by Dr. Lewis." (Id.).  Further, Defendant Mooney stated that "while a Physician

Assistant completed the examination and made recommendations, they are always

reviewed by a medical doctor for appropriateness and only signed off on if he agrees with them." (Doc. 1, p. 21). Mooney continued by asserting that "[i]n [Plaintiff's] specific claims Dr. Lewis reviewed and signed off on the PA's examination and recommendation." (Id.). Defendant Mooney concluded that "[b]ased upon the above information, the Facility Manager upholds the initial review response and denies your appeal and any relief sought." (Id.).

On June 16, 2014, Plaintiff filed a request to "CHCA-Medical Department" seeking to have "the $5.00 medical co-pay fee for a sick call visit deposited back into" his inmate account. (Id. at p. 22). Plaintiff indicated that on June 4, 2014, he filed a separate request to "CHCA in which Mr. Yackiel responded on" June 5, 2014. (Id.). According to Plaintiff, he "was again informing SCI-medical staff that [his] right shoulder dislocated again on" May 3, 2014, and that he:

> was requesting a follow-up MRI of [his] right shoulder due to "X-RAY'S NOT BEING ABLE TO DETECT INJURY TO [HIS] SHOULDER ONCE [HIS] SHOULDER RELOCATES, AND RECURRENT SHOULDER DISLOCATION CANNOT BE DIAGNOSED BY PHYSICAL EXAMINATION."

(Id.) (emphasis in original) (quoting Thomas v. Medina, 2009 U.S. Dist. LEXIS 5835 (E.D. Cal. 2009)). Additionally, Plaintiff requested that "the $5.00 co-pay fee withdrawn for sick call on" May 8, 2014, should be deposited back into his inmate account, and argued that he "should receive the follow-up doctor visits and

16

MRI to fully detect the injuries and damage to his right shoulder." (Doc. 1, p. 22).

On June 19, 2014, Plaintiff filed an appeal to final review regarding grievance #509307. (Id. at p. 24). Plaintiff argued that SCI-Coal Township was "being deliberately indifferent to a serious medical need, and providing inadequate medical care," and that Defendant Mooney's determination to deny grievance #509307 should be reversed. (Id.). According to Plaintiff, "[a] thorough review of [his] specific allegations regarding [his] recurrent shoulder dislocations warrant nothing other than to conclude the need for a follow up MRI and re-instatement of [his] bottom bunk status." (Id.). Plaintiff argued that, in regards to his request for an MRI, "**X-rays will not show ligament, tendon and rotary cuff damage currently present. Once my shoulder relocates**, the injury cannot be detected on X-rays or by a P.A. sick call examination." (Id.) (emphasis in original). Plaintiff also noted that during his visit with Defendant Davis he asked to be evaluated by "an outside specialist or be sent out to receive a MRI due to my right shoulder dislocating from time to time while here at SCI-Coal Township and my previous jail SCI-Cresson." (Id.). Plaintiff contended that SCI-Coal Township "does not want to order the MRI or have an orthopedic consultation due to the fact it may cost . . . too much money to have the proper treatment administered." (Id.).

From May 9, 2014, to August 12, 2014, Plaintiff's medical records establish

17

that he had numerous appointments with medical personnel for reasons unrelated to his alleged shoulder issue. (Doc. 31-1, pp. 48-52).

On August 13, 2014, Plaintiff sent an inmate request to Defendant Mooney. (Doc. 1, p. 26). In his request, Plaintiff stated that he suffered a shoulder dislocation during the morning of August 13, 2014, which was his "3rd or 4th since" his arrival at SCI-Coal Township. (Id.). After the dislocation occurred, Plaintiff claimed that he grabbed "nearby bars" and "wiggl[ed]" his shoulder back into position. (Id.). Plaintiff indicated that he immediately reported his shoulder injury and asked to be seen be medical personnel. (Id.). According to Plaintiff, he was instructed to return to his housing unit and "inform the block Sgt., Sgt. Rohland, in which [he] also complied." (Id.). Plaintiff claimed that he spoke with "Lt. Young . . . about the specifics of this situation . . . ." (Id.). Plaintiff asserted that he was told by Lt. Young that, based on policy, Plaintiff should have been sent to medical "from [the] yard, where the injury occurred." (Id.). Plaintiff indicated that he was then instructed to fill out a sick call slip. (Id.). He also claimed that "[i]t seems as though proper principles and procedure is not being rendered regarding my recurrent should dislocations." (Id.). Defendant Mooney responded to Plaintiff's request by instructing Plaintiff to "[b]e brief" and solely noted that "there is no room to respond." (Id.).

18

Plaintiff also filed an inmate request with "Medical-CHCA-or Doctor" on August 13, 2014, which detailed the shoulder dislocation that he suffered earlier that day. (Doc. 1, p. 27). Additionally, Plaintiff sought to have his dislocation documented, and that he be called down to be evaluated. (Id.).

On August 14, 2014, Plaintiff presented to sick call with a complaint of "shoulder laxity." (Doc. 31-1, p. 48). Plaintiff stated that on August 13, 2014, he was "bench pressing, [and] as he lifted the weight bar his [left] shoulder partially came out of socket." (Id.). Plaintiff also stated that "his shoulder has come out of socket while sleeping" and that he "is able to reduce it himself." (Id.). No swelling was found. (Id.). Plaintiff was also found to have full range of motion, "flexion, extension, internal and external rotation without difficulty." (Id.). During his examination, Plaintiff requested an MRI "or othro consult but" the examining physician, Dr. Rashida Laurence, concluded that the diagnosis was "rather obvious." (Id.). Dr. Laurence recommended that Plaintiff undergo "physical therapy to strengthen muscles around the joint." (Id.). Dr. Laurence also explained to Plaintiff that "an orthopedist will likely recommend [physical therapy] first before surgical intervention and an MRI" for "surgical planning." (Id.). Dr. Laurence also ordered Plaintiff not to play sports or lift weights. (Id.). Plaintiff was ordered to follow up after six (6) months of physical therapy. (Id.).

On August 17, 2014, Plaintiff submitted an inmate request to "Medical-CHCA, Doctor." (Doc. 1, p. 28). Plaintiff claimed that during his August 14, 2014 medical evaluation a physician assistant[2] stated that "she was going to make a 'REFERRAL' for a MRI and an 'ORTHOPEDIC CONSULTATION'." (Id.) (emphasis in original). Plaintiff also asserted that during his evaluation he was placed on restrictions and removed from his fitness session. (Id.). On August 19, 2014, Defendant Yackiel responded to Plaintiff's request. (Id.). Plaintiff was instructed not to take part in "sports or weightlifting," but he may "run/jog." (Id.). The response also informed Plaintiff that a "PT consult written, awaiting approval on the consult." (Id.). On August 19, 2014, Plaintiff was approved for physical therapy. (Doc. 31-1, pp. 27, 47).

On September 16, 2014, Defendant Dorina Varner, Chief Grievance Officer, issued a Final Appeal Decision regarding grievance #509307, which upheld the initial response. (Doc. 1, p. 29). Defendant Varner indicated that the Bureau of Health Care Services found "that the medical care was reasonable and appropriate." (Id.). Further, "[t]he findings of this review concur with the initial review response dated" May 22, 2014. (Id.). Finally, "[n]o evidence of neglect or

---

[2] Plaintiff was seen by Rashida Laurence, MD on August 14, 2014. (Doc. 1, p. 37); (Doc. 31-1, p. 48).

deliberate indifference" had been found.  (Doc. 1, p. 29).

On September 26, 2014, Plaintiff attended his initial physical therapy consultation.  (Doc. 31-1, p. 18).  Plaintiff was noted as having a history of right "shoulder laxity [with] instability" and "anterior displacement of shoulder [with] lifting or extreme rotation of shoulder."  (Id.).  During this consultation, Plaintiff's right shoulder was found to have range of motion within normal limits.  (Id. at p. 47).

On December 2, 2014, Plaintiff was seen by Dr. M. Moclock, who limited Plaintiff to weightlifting less than 50 pounds "for shoulders."  (Id. at p. 21).

From December 3, 2014, to March 3, 2015, Plaintiff's medical records establish that he was seen by numerous medical personnel for reasons unrelated to his alleged shoulder issue.  (Id. at pp. 43-45).

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002);

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under §

1983, a plaintiff must allege "the violation of a right secured by the Constitution

and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." West v. Atkins, 487 U.S.

42, 48 (1988).

Further, "[a] defendant in a civil rights action must have personal

involvement in the alleged wrongs . . . .  Personal involvement can be shown

through allegations of personal direction or of actual knowledge and

acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988); see

also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d

Cir. 2003).  Thus, individual liability can be imposed under Section 1983 only if

the state actor played an "affirmative part" in the alleged misconduct. Rode, 845

F.2d at 1207–08.  Alleging a mere hypothesis that an individual defendant had

personal knowledge or involvement in depriving the plaintiff of his rights is

insufficient to establish personal involvement. Id. at 1208.

A.     **Deliberate Indifference Under the Eighth Amendment**

In order to establish an Eighth Amendment deliberate indifference claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice."  Id. at 107.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Also, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).  Furthermore, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician.  Little v. Lycoming Cnty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  The key question is whether

the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Carlson, 685 F. Supp. at 1339.

In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Additionally, "[p]rison officials, who are not physicians, cannot be considered deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by medical personnel of the prison." Brown v. Fisher, 2015 U.S. Dist. LEXIS 109479, at *9-10 (M.D. Pa. 2015) (Kosik, J.) (citing Durmer, 991 F.2d at 69). "To fulfill the deliberate indifference element for a non-medical defendant, Plaintiff must show that the non-medical prison official had actual or constructive knowledge that prison doctors or their assistants mistreated or failed to treat Plaintiff." Culver v. Specter, 2013 U.S. Dist. LEXIS 141425, at *9 (M.D. Pa. 2013) (Kane, J.) (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer, 991 F.2d at 69). The United States Court of Appeals for the Third Circuit has stated that:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . . [A]bsent a reason to

25

> believe (or actual knowledge) that prison doctors or their
> assistants are mistreating (or not treating) a prisoner, a non-
> medical prison official . . . will not be chargeable with the
> Eighth Amendment scienter requirement of deliberate
> indifference.

Spruill, 372 F.3d at 236.

**B.     Corrections Defendants' Motion to Dismiss**

     **1.     Official Capacity Claims and Eleventh Amendment
        Immunity**

Corrections Defendants argue that Plaintiff's claims seeking money

damages against them in their official capacities should be dismissed as barred

under the Eleventh Amendment to the United States Constitution.  (Doc. 28, pp. 4-

5).

"Individual state employees sued in their official capacity are also entitled

to Eleventh Amendment immunity." Betts v. New Castle Youth Dev. Ctr., 621

F.3d 249, 254 (3d Cir. 2010).  The United States Court of Appeals has "previously

noted that the Commonwealth of Pennsylvania has expressly withheld its consent

to be sued." Turner v. AG Pa., 505 F. App'x 95, 98 (3d Cir. 2012) (per curiam)

(citing Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); 42 Pa. C.S. §

8521(b)).  Furthermore, "[b]ecause the [Pennsylvania Department of Corrections]

is part of Pennsylvania's executive department, its employees share in Eleventh

Amendment immunity to the extent they are sued in their official capacities."

Turner, 505 F. App'x at 98-99 (citing Will v. Mich. Dep't of State Police, 491 U.S.

58, 71 (1989); Lavia, 224 F.3d at 195).  Therefore, the claims against Corrections

Defendants, alleged employees, agents, servants, and/or representatives of the

Pennsylvania Department of Corrections, see (Doc. 1, pp. 2, 4, 7, 8), in their

official capacities for money damages will be dismissed as barred by the Eleventh

Amendment.

### 2. Failure to State of Claim of Deliberate Indifference Under the Eighth Amendment

#### a. Defendants Mooney, Yackiel, and Varner

Defendants Mooney, Yackiel, and Varner argue that Plaintiff's complaint

should be dismissed against them because he has failed to sufficiently allege their

personal involvement in the Eight Amendment claim.  (Doc. 28, pp. 5-10).  In

particular, Defendant Varner asserts that she is being sued "in her capacity as

Chief Grievance Officer and because she upheld the denial of the subject

grievance at Final Review." (Id. at p. 6).  As a result, Defendant Varner

concludes, she "cannot be considered to have personal involvement in any alleged

wrongdoing by virtue of upholding an appeal" (Id.) (citing Gordon v. Vaughn,

1999 U.S. Dist. LEXIS 7060, at *4 (E.D. Pa. 1999) ("failure of a prison official to

provide a favorable response to an inmate grievance is not a federal constitutional violation."). Similarly, Defendant Yackiel, "a Registered Nurse Supervisor who denied Grievance No. 509307 at Initial Review," argues that "[i]nsofar as Plaintiff's claim against Yackiel is based upon the denial of this grievance, he too should be dismissed from this matter." (Doc. 28, p. 6) (citing Judge v. Jin, 2014 U.S. Dist. LEXIS 87063, at *12 (W.D. Pa. 2014)).

As for Defendant Mooney, he claims Plaintiff's suit against him "is based upon an alleged request slip sent to him in which Plaintiff requested medical treatment." (Id.). According to Defendant Mooney, "[t]he receipt of a mere piece of correspondence is not adequate to impute Section 1983 liability . . . ." (Id.). Defendant Mooney argues that "[s]everal courts have held that 'it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.'" (Id. at pp. 6-7) (citing Padilla v. Beard, 2006 U.S. Dist. LEXIS 98622, at *6-7 (M.D. Pa. 2006), adopted by, 2006 U.S. Dist. LEXIS 32120 (M.D. Pa. 2006) (quoting Greenwaldt v. Coughlin, 1995 U.S. Dist. LEXIS 5144, at *11 (S.D.N.Y. 1995))). "Likewise, insofar as Plaintiff would hold Mooney liable for a constitutional violation because Mooney upheld the grievance denial on appeal, for the aforementioned reason, this allegation is

28

insufficient to establish personal involvement." (Doc. 28, pp. 6-7).

Plaintiff argues as to Defendant Mooney that he "has made specific allegations of [Defendant Mooney's] knowledge, and the [causal] link between himself and the alleged constitutional violation." (Doc. 29, p. 2).  Plaintiff claims that "[a]ll Corrections Defendants were acting in concert as alleged in Plaintiff's Initial Complaint." (Id.).  According to Plaintiff, he has:

> attached numerous documents which are Exhibits A through U evidencing the fact that defendant Mooney's knowledge and involvement in connection with Plaintiff's constitutional claims of Deliberate Indifference, Negligence, Medical negligence, Medical Malpractice, and Cruel and Unusual Punishment.

(Id.).  Plaintiff claims that "[t]his allegation is confirmed by Exhibits I, J, and N, in which the plaintiff submitted an Appeal of the denial of Grievance #509307, defendant Mooney's response, and a request slip directly sent to defendant Mooney . . . ." (Id.).  According to Plaintiff, the request slip he sent to Defendant Mooney sought "adequate medical treatment and care regarding [his] THIRD recurrent shoulder dislocation, which is evidence that defendant Mooney was Deliberate [(sic)] Indifferent to plaintiff's serious medical needs." (Id.) (emphasis in original).  Plaintiff argues that he "has objectively shown that defendant Mooney and each named defendant had a culpable state of mind in allowing or causing the Plaintiff's deprivation to occur." (Id.) (citing Wilson v. Seiter, 501

U.S. 294, 298-99 (1991)).

In regards to Defendant Varner, Plaintiff claims that her:

> knowledge and involvement is also confirmed due to the fact that the plaintiff challenged defendants Mooney, Martino and Yackiel through the administrative grievance procedures in which defendant Varner reviewed the plaintiff's numerous attempts seeking adequate medical treatment by having a MRI and an Orthopedic Consultation regarding [his] recurrent shoulder dislocations.

(Doc. 29, p. 3). Plaintiff argues that "Defendant Varner had the opportunity to review, investigate and recommend treatment for the plaintiff, but rather she 'Upheld' the decisions of all named defendants to deny the plaintiff access to a physician capable of evaluating the need for such treatment for a serious medical need." (Id.).

Plaintiff claims that Defendants Yackiel and Varner only were involved with respect to their respective handling of Plaintiff's grievances and appeals, which is supported by the relevant attachments to his complaint. (Doc. 1, pp. 4, 6, 7, 8, 18, 21, 25, 29). However, "[s]uch involvement is insufficient as a matter of law to render those defendants liable." House v. Fisher, 2016 U.S. Dist. LEXIS 11512, at *18 (M.D. Pa. Feb. 1, 2016) (Rambo, J.); see Sepulveda v. Ebbert, 2016 U.S. Dist. LEXIS 27190, at *16-18 (M.D. Pa. Mar. 3, 2016) (Kane, J.); Arroyo v. Li, 2014 U.S. Dist. LEXIS 120148, at *7 (M.D. Pa. 2014) (Conaboy, J.).

Therefore, Plaintiff's attempt to establish liability against Defendants Yackiel and Varner solely based upon their respective handling of Plaintiff's grievance #509307 is insufficient.

Additionally, taking the facts alleged in the complaint and considering the documents attached thereto as true, Plaintiff had received medical care for his shoulder around the time he filed the grievance in question, but that he merely disagreed with medical care provided. See (Doc. 1, pp. 16-18, 21, 29). However, "[a] plaintiff's disagreement with a medical professional's judgment 'does not state a violation of the Eighth Amendment.'" Sims v. Wexford Health Sources, 2015 U.S. App. LEXIS 22204, at *4-5 (3d Cir. 2015) (quoting Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)).

Therefore, accepting the factual allegations as true and considering the attachments to his complaint, Plaintiff has failed to set forth a viable Eighth Amendment claim against Defendants Yackiel and Varner as to their respective handling of Plaintiff's grievance and appeal. Therefore, Plaintiff's complaint against Defendants Yackiel and Varner will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

As for Defendant Mooney, Plaintiff alleges that Defendant Mooney should be held liable because of his handling of Plaintiff's grievances, appeals, and the

inmate request slip he submitted to Defendant Mooney on August 13, 2014. (Doc. 1, pp. 6, 21, 26). As stated, to the extent that Plaintiff attempts to impute liability to Defendant Mooney for his handling of Plaintiff's grievance appeal "[s]uch involvement is insufficient as a matter of law to render those defendants liable." House, 2016 U.S. Dist. LEXIS 11512, at *18.

In addition, taking the facts alleged in the complaint as true and considering the documents attached thereto, Plaintiff had received medical care for his shoulder issue at the time he filed the grievance in question, but that he merely disagreed with medical care he received. (Doc. 1, pp. 16-18, 21). As noted above, his "disagreement with a medical professional's judgment 'does not state a violation of the Eighth Amendment.'" Sims, 2015 U.S. App. LEXIS 22204, at *4-5 (quoting Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)). Therefore, accepting the factual allegations as true and considering the attachments to his complaint, Plaintiff has failed to set forth a viable Eighth Amendment claim against Defendant Mooney as to his handling of Plaintiff's grievance appeal.

Furthermore, to the extent that Plaintiff is attempting to hold Defendant Mooney liable for being deliberately indifference as a result of his handling of Plaintiff's inmate request slip dated August 13, 2014, he likewise fails to state a claim upon which relief may be granted. As the facts alleged in the complaint and

32

the documents attached thereto demonstrate, Plaintiff received medical treatment from Dr. Laurence on August 14, 2014, for the complaints he raised in his August 13, 2014 inmate request slip submitted to Defendant Mooney. (Doc. 1, p. 6). Therefore, on August 21, 2014, when Defendant Mooney responded to Plaintiff's inmate request slip, Plaintiff had received medical treatment for his shoulder dislocation. (Id. at pp. 6, 26). As non-medical personnel, Defendant Mooney is "entitled to presume the competence of medical staff in treating a prisoner, meaning that his conduct cannot, without much more, amount to 'deliberate indifference.'" Davis v. Superintendent Somerset SCI, 597 F. App'x 42, 45-46 (3d Cir. 2015) (citing Spruill, 372 F.3d at 236). Consequently, Plaintiff has failed to allege facts to demonstrate that Defendant Mooney was deliberately indifferent to Plaintiff's medical needs. As a result, Plaintiff's Eight Amendment claim against Defendant Mooney will be dismissed.

### b.   Defendant Martino

Plaintiff alleges that he submitted inmate request slips to Defendant Martino. (Doc. 1, p. 4). He also claims that Defendant Martino "responded to numerous inmate request slips, had knowledge and/or supervised plaintiff's medical treatment and care, and physical examinations administered." (Id. at pp. 7-8); see (Id. at pp. 13-14, 22).

33

Defendant Martino asserts that Plaintiff alleges that she is liable for deliberate indifference, "but as evidenced by the attachments to the Complaint,[footnote omitted] in response to a request slip from Plaintiff asking that she schedule Plaintiff for a MRI, she does not do scheduling or prescribing because she is not a medical provider." (Doc. 28, p. 9). According to Martino, she properly directed Plaintiff "to contact sick call to have his medical concerns addressed." (Id.) (citing Doc. 1, Ex. E; Lee v. Cerullo, 287 F. App'x 145, 148 (3d Cir. 2008), cert. denied, 129 S. Ct. 2065 (2009)). Defendants argue that "[t]here is nothing in the Complaint, or attached thereto, that indicates that [Defendant Martino], or any of the identified Corrections Defendants, refused to provide Plaintiff with needed medical care, delayed treatment for a non-medical reason, or prevented him from receiving needed medical care." (Id.) (emphasis in original). Further, Corrections Defendants argue that "[t]here is nothing in the Complaint or attached thereto to suggest that [Defendant Martino] could not have reasonably relied on the decisions of the medical professionals retained by the Department to treat Plaintiff." (Id.) (citing Durmer, 991 F.2d at 69).

Plaintiff argues that "Defendants Mooney, Martino and Yackiel were in fact deliberately indifferent to plaintiff's recurrent shoulder dislocations, which was/is a serious medical need." (Doc. 29, p. 2). Plaintiff also generally asserts that:

> [t]he defendants were informed of the plaintiff's shoulder
> dislocations and injuries, were informed of the seriousness,
> refused to ensure that plaintiff would receive immediate
> medical care on multiple occurrences, and presided over the
> provisions of medical care by individuals not qualified or
> believed to be qualified to provide such care, or provide no
> care at all.

(Doc. 29, p. 4).  Further, Plaintiff claims the Corrections Defendants "were

informed about the recurrent shoulder dislocations when they occurred, and

refused to secure plaintiff medical attention and treatment." (Id.).  Plaintiff also

states that the Defendants "received numerous request slips, and the plaintiff

complied with the grievance procedures . . . ." (Id.).

Plaintiff alleges that Defendant Martino, the "Corrections Health Care

Administrator" at SCI-Coal Township,  along with Defendants Davis and Yackiel,

"contracted or otherwise employed" with Defendants Wexford Health and Correct

Care Solutions, and "provided care to inmates, including plaintiff . . . ." (Doc. 1,

pp. 2, 4, 7).  Plaintiff also claims that he "submitted request slips to . . . Defendant

Jodie Martino . . . ." (Id. at p. 4).  Additionally, Plaintiff claims that Defendant

Martino was:

> an employee, agent, servant, and/or representative of Defendant
> PA Dept. of Corrections until August 2014, who was at
> relevant times, the C.H.C.A. at SCI- Coal Township, who
> responded to numerous inmate request slips, had knowledge
> and/or supervised plaintiff's medical treatment and care, and

physical examinations administered.

(Doc. 1, pp. 7-8).

Taking Plaintiff's allegations as true and considering the exhibits attached to his complaint, Defendant Martino, at most, received and responded to Plaintiff's complaints expressing his dissatisfaction with the medical care he was receiving. See (Id. at pp. 4, 7-8, 13, 14, 22). To the extent that Plaintiff alleges that Defendant Martino should be liable for her responses to his requests, such an allegation fails to state a claim of deliberate indifference and "under the circumstances presented here [Defendant Martino] cannot be considered deliberately indifferent because she allegedly 'failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" Lee, 287 F. App'x at 148 (quoting Durmer, 991 F.2d at 69); see Davis, 597 F. App'x at 45-46 (non-medical official "entitled to presume the competence of medical staff in treating a prisoner, meaning that his conduct cannot, without much more, amount to 'deliberate indifference.'") (citing Spruill, 372 F.3d at 236); Arroyo, 2014 U.S. Dist. LEXIS 120148, at *7 (the plaintiff's attempt to establish liability against defendant "solely based upon her supervisory capacity as the prison's Health Care Administrator or based upon her handling of any administrative grievance filed by" the plaintiff was "insufficient"); see also

36

Dominguez v. Governor of Pa., 574 F. App'x 63, 65 (3d Cir. 2014) (per curiam)

(citing Rode, 845 F.2d at 1208).  As a result, the claim against Defendant Martino

will be dismissed.

**C.   Defendants Davis, Wexford Health and Hale's Motion for
Summary Judgment**

**1.   Eighth Amendment Deliberate Indifference Claim Against
Defendants Davis and Wexford Health**

The extensive documentation of record, indicates that Plaintiff has been

repeatedly evaluated and treated for his shoulder issue by multiple medical

personnel, including Defendant Davis, at SCI-Coal Township.  See (Doc. 31-1, pp.

18, 19, 21-22, 25-26, 27, 30, 33, 47, 48, 52, 58, 60).  He has been consistently

evaluated and reevaluated and his health needs have been given considerable

attention.  (Id.).

To the extent that Plaintiff disagrees with Defendants Davis and Wexford

Health as to what diagnostic procedures and treatment he should have received,

such disagreement, however, does not serve as a predicate to liability under §

1983.  See Napoleon, 897 F.2d at 108-110 (no deliberate indifference claim is

stated when a doctor disagrees with the professional judgment of another doctor

since "[t]here may, for example, be several acceptable ways to treat an illness.");

Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (claim

for deliberate indifference does not arise just because one doctor disagrees with

the diagnosis of another); see also Rhines v. Bledsoe, 388 F. App'x 225, 227 (3d

Cir. 2010) (affirmed the district court's entry of summary judgment in favor of

defendants alleged to have been deliberately indifferent because they failed to

order an MRI "in a more timely manner."). This is particularly so in light of the

fact that there is no evidence of record that Defendants Davis or Wexford Health

intentionally withheld medical treatment from Plaintiff in order to inflict pain or

harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse,182 F.3d at 197. Thus,

Plaintiff's complaints amount to nothing more than Plaintiff's subjective

disagreement with Defendant Davis and Wexford Health's treatment decisions and

medical judgment. However, "[a]n inmate's disagreement with medical treatment

is insufficient to establish deliberate indifference." Gonzalez v. Kerestes, 2016

U.S. Dist. LEXIS 36060, at *23 (M.D. Pa. Mar. 21, 2016) (Mannion, J.) (citing

Durmer, 991 F.2d at 69); see Altland v. Wetzel, 2015 U.S. Dist. LEXIS 124787, at

*28 (M.D. Pa. 2015) (Conner, J.) ("Claims of medical malpractice and

disagreements as to the proper course of medical treatment simply do not suffice

to satisfy the deliberate indifference standard.") (citing Monmouth Cnty., 834 F.2d

at 346). Moreover, a "medical decision not to order an X-ray, or like measures,

does not represent cruel and unusual punishment. At most it is medical

malpractice." <u>Estelle,</u> 429 U.S. at 107.

As such, Plaintiff fails to articulate an arguable claim against Defendants Davis and Wexofrd Health under § 1983. <u>See</u> <u>Napoleon,</u> 897 F.2d at 108-110. As a result, Defendant Davis and Wexford Health's motion for summary judgment as to Plaintiff's Eighth Amendment claim will be granted and thus, judgment will be entered in their favor.

### 2.   **Eighth Amendment Deliberate Indifference Claim Against Defendant Hale**

Defendant Hale claims that "[a]lthough Plaintiff avers that [Defendant Hale] is liable to him, he provides no explanation within either his Complaint or the grievances regarding how [Hale] was personally involved in the treatment decisions pertaining to [Plaintiff's] shoulder." (Doc. 31, p. 15). Defendant Hale, who was President and CEO of Wexford Health, argues that "[i]n this regard, his position was administrative in nature." (Doc. 1, pp. 31-33); (Doc. 31, p. 15). Defendant Hale also asserts that he "was not a medical doctor and did not diagnose or treat inmates for medical issues." (Doc. 31, p. 15). Therefore, Defendant Hale argues that he should be dismissed because "he was not personally involved in the treatment decisions regarding [Plaintiff]." (<u>Id.</u>).

As stated above, "[l]iability under § 1983 is personal in nature and can only

follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence." Zilich v. Doll, 2016 U.S. Dist. LEXIS 2684, at *4 (M.D. Pa. Jan. 11, 2016) (Mannion, J.) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)). "Liability may not be imposed under § 1983 on the traditional standards of respondeat superior." Lewis v. Wetzel, 2015 U.S. Dist. LEXIS 170283, at *40 (M.D. Pa. 2015) (Kane, J.) (citing Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989)). Rather, "[t]here are only two avenues for supervisory liability." Id. "First, . . . if the supervisor knew of, participated in or acquiesced in the harmful conduct, and second, if a supervisor established and maintained a policy, custom or practice which directly caused the constitutional harm." Id. (citing Capone, 868 F.2d at 106; Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010); A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

Plaintiff has failed to sufficiently establish that Defendant Hale, as President and CEO of Wexford Health, had the requisite personal involvement in his deliberate indifference claim to survive summary judgment. Outside of naming him as a defendant in his complaint, the only reference to Defendant Hale can be found in the "Contract for Correctional Health Care Services" attached to Plaintiff's complaint. (Doc. 1, pp. 31-33). Not only is Defendant Hale glaringly

absent in Plaintiff's complaint, but there is no evidence in Plaintiff's medical records that establishes that Defendant Hale had any personal involvement in the Eight Amendment claim.  See (Doc. 31-1, pp. 1-78).  Therefore, summary judgment will be entered in favor of Defendant Hale.

### D .   Remaining Defendants

The remaining Defendants are Patrick Cumminsky, President of Correct Care Solutions, SCI-Coal Township and the Pennsylvania Department of Corrections.  (Doc. 1, p. 3).  Although a waiver of service was sent to Defendants Cumminsky, SCI-Coal Township, and the Pennsylvania Department of Corrections on February 6, 2015, (Doc. 15, p. 2), these waivers were not returned as executed.  Nevertheless, the Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  Under Section 1915A, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa.1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and

42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or <u>sua</u> <u>sponte</u>, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding <u>in</u> <u>forma</u> <u>pauperis</u>. <u>See</u> 28 U.S.C. § 1915(e)(2).[3]  Under this provision as well, not only is a court permitted to <u>sua</u> <u>sponte</u> dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. <u>See</u>, <u>e.g.</u>, <u>Keener v. Pa. Bd. of Probation and Parole</u>, 128 F.3d 143, 145 n.2 (3d Cir.1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating <u>sua</u> <u>sponte</u> dismissal of <u>in</u> <u>forma</u> <u>pauperis</u> actions that are frivolous or fail to state a claim."). In performing a court's mandated function of <u>sua</u> <u>sponte</u> reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Tucker v. Angelone</u>, 954 F.

---

[3]  Title 28 U.S.C. § 1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—(B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42

U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates

that 'fail to state a claim upon which relief could be granted' ").

As stated, "[l]iability under § 1983 is personal in nature and can only follow

personal involvement in the alleged wrongful conduct shown through specific

allegations of personal direction or actual knowledge and acquiescence." Zilich,

2016 U.S. Dist. LEXIS 2684, at *4 (citing Robinson v. City of Pittsburgh, 120

F.3d 1286 (3d Cir. 1997)). "Liability may not be imposed under § 1983 on the

traditional standards of respondeat superior." Lewis, 2015 U.S. Dist. LEXIS

170283, at *40 (citing Capone, 868 F.2d at 106). Rather, "[t]here are only two

avenues for supervisory liability." Id. "First, . . . if the supervisor knew of,

participated in or acquiesced in the harmful conduct, and second, if a supervisor

established and maintained a policy, custom or practice which directly caused the

constitutional harm." Id. (citing Capone, 868 F.2d at 106; Santiago, 629 F.3d at

129; A.M. ex rel. J.M.K., 372 F.3d at 586 (3d Cir. 2004)).

Although named as a defendant, the only presence of Defendant

Cumminsky in Plaintiff's complaint and attached exhibits is Cumminsky's

signature on a "Contract for Health Care Services." (Doc. 1, pp. 35-36). Nowhere

in his complaint does Plaintiff even impliedly allege that Cumminsky played any

role in his deliberate indifference claim.  Instead, Plaintiff appears to name

Cumminsky as a defendant because he is the "President" of Correctional Care

Solutions, which allegedly "contracted or otherwise employed" Defendants Davis,

Martino, and Yackiel.  (Doc. 1, p. 7).  As a result, Plaintiff fails to sufficiently

allege that Defendant Cumminsky, as President of Correctional Care Solutions,

had sufficient personal involvement in the deliberate indifference claim.

Consequently, Plaintiff's federal claim will be dismissed as to Defendant

Cumminsky pursuant to 28 U.S.C. § 1915(e)(2)(B).

　　　To the extent that Plaintiff seeks to assert deliberate indifference claims

against SCI-Coal Township and the Pennsylvania Department of Corrections,

those claims also will be dismissed.  "Under the Eleventh Amendment, states and

their agencies are immune from suits in federal court, unless Congress has

overridden that immunity or the State has waived its immunity."  Sims, 2015 U.S.

App. LEXIS 22204, at *4 (citing Laskaris v. Thornburgh, 661 F.2d 23, 25-26 (3d

Cir. 1981)).  "When enacting 42 U.S.C. § 1983, Congress did not override

Pennsylvania's immunity from suit."  Id. (citing Quern v. Jordan, 440 U.S. 332,

340-45 (1979)).  The United States Court of Appeals has "previously noted that

the Commonwealth of Pennsylvania has expressly withheld its consent to be

sued."  Turner, 505 F. App'x at 98 (citing Lavia, 224 F.3d at 195; 42 Pa. C.S. §

44

8521(b)).  The Pennsylvania Department of Corrections "is a state agency."  <u>Sims</u>,

2015 U.S. App. LEXIS 22204, at *4 (citing 71 P.S. § 310-1).  Moreover, SCI-Coal

Township is a part of the Pennsylvania Department of Corrections.[4]  Therefore, the

Pennsylvania Department of Corrections and SCI-Coal Township are immune

from suit.

Additionally, SCI-Coal Township and the Pennsylvania Department of

Corrections are not "persons" under section 1983.  <u>See</u> <u>Pettaway v. SCI Albion</u>,

487 F. App'x 766, 768 (3d Cir. 2012) (citing <u>Will v. Mich. Dep't of State Police</u>,

491 U.S. 58, 71 (1989)); <u>Ruff v. Health Care Adm'r</u>, 441 F. App'x 843, 845-46

(3d Cir. 2011) (citing <u>Fischer v. Cahill</u>, 474 F.2d 991, 992 (3d Cir. 1973) (per

curiam)).  Therefore, Plaintiff cannot successfully assert a claim against SCI-Coal

Township and the Pennsylvania Department of Corrections under section 1983.

Consequently, Defendants SCI-Coal Township and the Pennsylvania Department

of Corrections will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28

U.S.C. § 1915A.

## IV.   <u>LEAVE TO AMEND</u>

"When a complaint fails to present a prima facie case of liability, courts

---

[4] SCI-Coal Township, Pennsylvania Department of Corrections,
http://www.cor.pa.gov/Facilities/StatePrisons/Pages/Coal-Twp.aspx#.Vs8gqmwo6
70 (last visited Feb. 25, 2016).

should generally grant leave to amend before dismissing a complaint." Smith v. Ebbert, 2016 U.S. Dist. LEXIS 8348, at *12 (M.D. Pa. Jan. 25, 2016) (Mariani, J.) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000)). Even "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson, 293 F.3d at 108 (citing Fauver, 213 F.3d at 116; Dist. Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986); Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir. 1985); Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976)); Simpson v. Luzerne Cnty. Corr. Facility, 2015 U.S. Dist. LEXIS 92861, at *4-5 (M.D. Pa. July 17, 2015) (Munley, J.) (leave to amend should be granted by a court "unless it finds bad faith, undue delay, prejudice or futility.") (citations omitted). "Rather, a district court 'should freely give leave [to amend] when justice so requires.'" Simpson, 2015 U.S. Dist. LEXIS 92861, at *5 (quoting FED. R. CIV. P. 15(a)(2)).

Here, Plaintiff's federal claims against Defendants Mooney, Martino, Yackiel, Varner, Cumminsky, SCI-Coal Township, and the Pennsylvania Department of Corrections will be dismissed for failing to state a claim upon which relief may be granted. As for Defendants Martino, Mooney, Yackiel, and

Varner, leave to amend would be futile because the involvement alleged "is insufficient as a matter of law to render those defendants liable." House, 2016 U.S. Dist. LEXIS 11512, at *18; see Harper v. Dinella, 589 F. App'x 67, 69 (3d Cir. 2015) (leave to amend would be futile for claims that fail as a matter of law). Therefore, leave to amend will be denied as to Defendants Martino, Mooney, Yackiel, and Varner.

Leave to amend will also be denied as to Defendants SCI-Coal Township and the Pennsylvania Department of Corrections. As discussed above, these Defendants possess Eleventh Amendment immunity from suit and are not "persons" under section 1983. Thus, granting leave to amend would be futile. See Walters v. Pa. State Police, 2014 U.S. Dist. LEXIS 167240, at *1-3 n.1 (M.D. Pa. 2014) (Conner, J.) (citing Phillips, 515F.3d at 245); see also Pettaway, 487 F. App'x at 768.

As for Defendant Cumminsky, any amendment in this case would be futile because it is apparent from the complaint that Plaintiff is attempting to impose upon him respondent superior liability. (Doc. 1, pp. 7, 35-36); see Martin v. Samuels, 2014 U.S. Dist. LEXIS 11697, at *13-14 (M.D. Pa. 2014) (plaintiff denied leave to amend as futile because plaintiff failed to "state the requisite factual specificity and allegations of personal involvement with regards to the

47

constitutional claims against these Defendants, and confirms that they are named solely on a respondent superior theory of liability."). As a result leave to amend will be denied as to Defendant Cumminsky.

## V.    **Pendent State Law Claims**

According to the supplemental jurisdiction statute:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Therefore, pursuant to section 1367(a), the Court would have supplemental jurisdiction over Plaintiff's pendent state claims of medical negligence and medical malpractice.

However, under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." "[I]f a federal claim is dismissed prior to trial, the district court should decline to decide the pendent state claims, 'unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so.'"

48

Christian v. State Officers, 2015 U.S. Dist. LEXIS 160353, at *8 (M.D. Pa. 2015)

(Conaboy, J.) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d

Cir. 1995)).  As discussed above, no federal claims remain.  Also, the Court notes

that the only possible consideration for retaining jurisdiction of any state law

claims would be whether the statute of limitations on Plaintiff's state law claims

have expired.  However, as noted by the United States Court of Appeals for the

Third Circuit, "Congress foresaw th[is] precise problem . . . and prescribed a

cure."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).  Specifically, in 28

U.S.C. § 1367(d), Congress provided that:

> [t]he period of limitations for any claim asserted under
> subsection (a), and for any other claim in the same action that is
> voluntarily dismissed at the same time as or after the dismissal
> of the claim under subsection (a), shall be tolled while the
> claim is pending and for a period of 30 days after it is
> dismissed unless State law provides for a longer tolling period.

Therefore, the Court is not aware of any considerations of judicial economy,

convenience, and fairness that would provide an affirmative justification for

exercising supplemental jurisdiction over Plaintiff's state law medical negligence

claim.  As a result, Plaintiff's pendent state claims of medical negligence and

medical malpractice will be dismissed without prejudice pursuant to 28 U.S.C. §

1367(c)(3).[5]

## VI.   CONCLUSION

As a result of the foregoing, Corrections Defendants' motion to dismiss will

be granted as to Plaintiff's federal claims.  Defendants Wexford Health, Hale, and

Davis' motion for summary judgment will be granted as to Plaintiff's federal

claims.  Defendants Cumminsky, SCI-Coal Township, and the Pennsylvania

Department of Corrections will be dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A. Plaintiff's remaining pendent state law

claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

A separate Order will be issued.

Date: March 30, 2016                                      /s/ William J. Nealon
                                                         **United States District Judge**

---

[5] Corrections Defendants argue that Plaintiff's pendent state claims of
medical negligence and medical malpractice should be dismissed against
Defendants Mooney and Varner "because they are not licensed professionals who
provide medical care and they are not nurses." (Doc. 28, p. 12).  As for
Defendants Yackiel and Martino, Corrections Defendants argue that Plaintiff's
state law claims should be dismissed because Plaintiff failed to file a certificate of
merit ("COM").  (Id.).  Similarly, Defendants Wexford Health, Hale, and Davis
argue that Plaintiff's state law claims should be dismissed because (1) "Plaintiff
has failed to state that the Defendants breached the standard of care that he
suffered a harm as a result;" (2) as to Defendant Hale, he "is not a licensed
medical professional and did not personally provide medical treatment to
Plaintiff;" and (3) as to Defendants Wexford Health and Davis, "Plaintiff failed to
timely file a [COM] . . . ." (Doc. 31, pp. 16-18).  Because the Court declines to
exercise supplemental jurisdiction over Plaintiff's state claims it need not address
the merits of Defendants' respective arguments as to those claims.